## S11A0734. THE STATE v. KELLY.

(718 SE2d 232)

HUNSTEIN, Chief Justice.

We granted the State's interlocutory appeal, in which it challenges the grant of a new trial to appellee Lonnie Kelly as the result of the finding of a fatal omission in the jury charge, to address (1) the circumstances under which an appellate court may review alleged jury instruction errors to which no objection was raised at trial, see OCGA § 17-8-58; and (2) assuming such review was appropriate in this case, whether the trial court correctly held that the omission in the jury charge here constituted plain error. We conclude that, while the trial court did properly conduct a plain error review of the unobjected-to jury charge, the court erred in holding that the omission in the charge did in fact constitute plain error. Accordingly, we reverse and remand.

In August 2007, Kelly was convicted of felony murder and four other charges in connection with the December 2003 death of Warren Jacobs and sentenced to life imprisonment plus concurrent terms of fifteen and five years. The felony murder count charged Kelly with causing the victim's death during the commission of the felony of theft by receiving stolen property. The other counts included (1) first degree vehicular homicide based on hit and run; (2) first degree vehicular homicide based on reckless driving; (3) theft by receiving stolen property; and (4) hit and run. On motion for new trial, a different trial judge held that the trial court had failed to adequately instruct the jury regarding the requisite dangerousness of the predicate felony, see *Ford v. State*, 262 Ga. 602 (1) (423 SE2d 255) (1992) (to support felony murder conviction, predicate felony must either be dangerous per se or create foreseeable risk of death under the attendant circumstances), and that such omission constituted plain error, mandating a new trial.

The felony murder count of the indictment charged, in pertinent part,

the said accused . . . did unlawfully during the commission of a felony, to wit: theft by receiving stolen property (auto), cause the death of Warren Jacobs, a human being, by driving a vehicle on a public highway after sunset without headlights at a high rate of speed; contrary to the laws of said State, the good order, peace and dignity thereof.

Likewise, the vehicular homicide by reckless driving count was based on "driving a vehicle on a public highway after sunset, without headlights, at a high rate of speed." All the counts of the indictment were read to the jury at the outset of trial.

In instructing the jury at the close of evidence, the trial court set forth the general elements of felony murder and theft by receiving, and gave a standard charge on proximate cause. In addition, largely tracking the language of the pattern instruction on felony murder,[1] the trial court charged further:

> If you find and believe beyond a reasonable doubt that the defendant . . . was engaged in the commission of the felony of theft by receiving stolen property, then you would be authorized to find the defendant guilty of murder, whether the homicide was intended or not.
> . . .
> In order for homicide to have been done in the commission of this particular felony there must be some connection between the felony and the homicide. Homicide must have been done in carrying out the unlawful act and not collateral to it.
> It is not enough that the homicide occurred soon or presently after the felony was committed. . . . The felony must have a legal relationship to the homicide, be at least concurrent with it in part, and be part of it in an actual and material sense.
> A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

The jury was also charged that the offense of vehicular homicide requires a finding that the defendant "causes the death of another person by driving any vehicle in such a manner as to be in reckless disregard for the safety of persons or property."

At the conclusion of the jury charge, Kelly's counsel stated affirmatively that the defense had no objections to any portion of the court's charge. On motion for new trial, however, Kelly asserted error in the trial court's "failure to instruct the jury to consider whether the predicate offense in support of the felony murder charge was occurring in a manner which would create a foreseeable risk of harm," thereby allegedly usurping the jury's role as factfinder with respect to the "inherent dangerousness" element of the felony upon which the felony murder charge was predicated. The trial court agreed and granted a new trial on this basis. We now review the trial

---

[1] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007), § 2.10.30.

court's decision de novo. *O'Neal v. State*, 285 Ga. 361 (677 SE2d 90) (2009) (first grant of new trial on special grounds involving a question of law must be reviewed under de novo standard).

1. Given Kelly's undisputed failure to object to any portion of the trial court's jury charge, we must first address the duty of an appellate court under current law to consider alleged jury instruction errors to which no objection was asserted at trial. OCGA § 17-8-58 provides:

> (a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.
>
> (b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

Id. Effective for trials conducted on or after July 1, 2007, see Ga. L. 2007, p. 595, § 5, this statute changed the prior practice whereby "counsel could generally reserve objections to the charge pending a motion for new trial or appeal." Jack Goger, Daniel's Georgia Criminal Trial Practice, § 24-16 (2010-2011 ed.). While generally erecting more stringent requirements for the preservation of jury instruction errors than have existed in the past, the statute retains an avenue of appellate review for "plain error[s] which affect[ ] substantial rights of the parties," without regard to their preservation below. OCGA § 17-8-58 (b).

Unresolved since the statute's enactment is the issue of precisely when an appellate court is required to engage in a "plain error" analysis of unobjected-to jury charges being challenged on appeal. Compare *Collier v. State*, 288 Ga. 756 (4) (707 SE2d 102) (2011) (assuming without deciding that unobjected-to jury instructions are subject to review for plain error under OCGA § 17-8-58 (b)), with id. at 759-766 (Nahmias, J., concurring specially, opining that plain error review is required whenever jury instruction issue is asserted on appeal). See also *Cawthon v. State*, 289 Ga. 507 (713 SE2d 388) (2011) (two concurring opinions expressing different views on meaning of OCGA § 17-8-58 (b)). Indeed, this Court appears to have applied the statute inconsistently, conducting plain error review as a

matter of course in some cases, while finding appellate review to have been waived altogether in others. Compare *Crawford v. State*, 288 Ga. 425 (3) (a) (704 SE2d 772) (2011) (applying plain error review); *Lacey v. State*, 288 Ga. 341 (2) (703 SE2d 617) (2010) (same); *Higginbotham v. State*, 287 Ga. 187 (4) (695 SE2d 210) (2010) (same); *Hicks v. State*, 287 Ga. 260 (4) (695 SE2d 195) (2010) (same), with *Madrigal v. State*, 287 Ga. 121 (3) (694 SE2d 652) (2010) (finding waiver of unpreserved error without addressing plain error); *Thompson v. State*, 286 Ga. 889 (3) (692 SE2d 379) (2010) (same); *Hatcher v. State*, 286 Ga. 491 (4) (690 SE2d 174) (2010) (same); *Metz v. State*, 284 Ga. 614 (5) (669 SE2d 121) (2008) (same).

We now hold that, under OCGA § 17-8-58 (b), appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions.[2] This construction is consistent with the plain language of the statute, which creates a clear exception to the waiver rule in all cases of plain error. We note that it is also consonant with the analogous statutory provision applying to civil cases. See OCGA § 5-5-24 (c) ("[n]otwithstanding [the failure to object at trial], the appellate courts *shall* consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law" (emphasis supplied)).[3] To the extent authority from this Court or the Court of Appeals may be construed otherwise, such cases are hereby overruled. See, e.g., *Madrigal*, supra, 287 Ga. at 122-123 (3); *Thompson*, supra, 286 Ga. at 891 (3); *Hatcher*, supra, 286 Ga. at 494 (4); *Metz*, supra, 284 Ga. at 619-620 (5); *Ware v. State*, 305 Ga. App. 229 (3) (699 SE2d 435) (2010); *Vaughn v. State*, 301 Ga. App. 55 (2) (686 SE2d 847) (2009); *Jones v. State*, 300 Ga. App. 287 (3) (684 SE2d 411) (2009); *Johnson v. State*, 293 Ga. App. 294 (2) (666 SE2d 635) (2008).

2. (a) Having determined that plain error analysis is required in this case where omission of the jury instruction was enumerated and argued on motion for new trial and on appeal, we now undertake that analysis. In accordance with the federal plain error rule, we have previously defined "plain error" as "that which is 'so clearly

---

[2] See, e.g., Supreme Court Rules 19 and 22 (regarding enumeration of errors and argument and authority). While we will review properly enumerated and argued claims of jury instruction error regardless of whether the appealing party specifically casts the alleged infirmity as "plain error," parties should be advised that the hurdle to establishing plain error is high, as discussed in Division 2 (a), infra, and therefore that the failure to specifically articulate how the alleged error satisfies this high standard increases the likelihood that their claims in this regard will be rejected.

[3] Prior to the enactment of OCGA § 17-8-58, OCGA § 5-5-24 (c) was the exclusive avenue in all cases for appellate review of jury instruction errors that had been waived (an infrequent occurrence in criminal cases pre-OCGA § 17-8-58, given the ease with which exceptions could be reserved).

erroneous as to result in a likelihood of a grave miscarriage of justice' or which 'seriously affects the fairness, integrity or public reputation of a judicial proceeding.' *United States v. Fuentes-Coba*, 738 F2d 1191, 1196 (11th Cir. 1984)." *Lynd v. State*, 262 Ga. 58, 61 (8), n. 2 (414 SE2d 5) (1992). Since our articulation of this standard, the United States Supreme Court has elaborated on the federal plain error rule. See *United States v. Olano*, 507 U. S. 725 (II) (113 SC 1770, 123 LE2d 508) (1993). Notably, the federal standard derives from Federal Rule of Criminal Procedure 52 (b), which provides that "a plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Given that OCGA § 17-8-58 (b) adopts Rule 52 (b)'s language almost verbatim, we believe our Legislature intended, in the context of jury instruction errors, to embrace the federal plain error standard as stated in Rule 52 (b) and clarified in *Olano* and its progeny. Accordingly, we now adopt the federal standard, recently summarized as involving the following four prongs:

> First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the [trial] court proceedings." Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the *discretion* to remedy the error — discretion which ought to be exercised only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' "

(Citations omitted; emphasis in original.) *Puckett v. United States*, 556 U. S. 129 (II) (a) (129 SC 1423, 1429, 173 LE2d 266) (2009). As summarized even more succinctly in the context of OCGA § 17-8-58 (b), "[t]he proper inquiry . . . is whether the instruction . . . was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." *Wagner v. State*, 311 Ga. App. 589, 594 (716 SE2d 633) (2011) (Blackwell, J., concurring specially) (citing *Olano*, supra at 734 (II) (A)). If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below. *Olano*, supra at 736 (II) (B). Satisfying all four prongs of this standard "is difficult, 'as it should be.' [Cit.]" *Puckett*, supra at 1429 (II) (a).

(b) Appellant asserts plain error arising from the trial court's failure to instruct the jury explicitly that it must find as an element of the felony murder that the underlying felony of theft by receiving was committed in a manner that created a foreseeable risk of death.[4] Notably, recent precedent from this Court clearly holds that a trial court's refusal to give an "inherent dangerousness" instruction, even when it *was* requested, did not constitute error. *Shivers v. State*, 286 Ga. 422, 424 (3) (688 SE2d 622) (2010). Given that our case law runs contrary to appellant's position, it cannot be seriously contended that the trial court committed "clear or obvious" error.

In addition, the omission of the instruction did not affect the outcome of the proceedings. Even without the benefit of the instruction, the jury did make the requisite factual finding of dangerousness as to the predicate felony, given that the same facts charged as the basis for the felony murder — "driving a vehicle on a public highway after sunset without headlights at a high rate of speed" — also formed the basis for the count of vehicular homicide by reckless driving, an offense which, by definition, creates a foreseeable risk of death. See OCGA §§ 40-6-390 (a) (defining reckless driving as driving with reckless disregard for safety of persons or property); 40-6-393 (a) (defining vehicular homicide as causing another's death through violation of OCGA § 40-6-390 (a)). In other words, though the jury was not explicitly instructed that it must find Kelly to have been acting in a dangerous manner in order to convict him of the felony murder based on theft by receiving, the jury did *in fact* make such a finding when it found him guilty of vehicular homicide by reckless driving — a crime which is dangerous per se — based on identical charged facts. Accordingly, there is no likelihood that the outcome of the trial would have been different had the instruction in question been given, and, for this reason as well, there is no plain error.[5]

3. The record reflects that Kelly's motion for new trial, as amended, included nine separately enumerated grounds. However, after granting the motion on the ground discussed above, the trial court

did not reach the other issues raised in [Kelly's] motion for

---

[4] See *Shivers v. State*, 286 Ga. 422, 428-431 (3) (688 SE2d 622) (2010) (Nahmias, J., concurring specially) (discussing rationale for requiring explicit jury instructions on the "inherent dangerousness" of a predicate felony).

[5] Due to our finding that neither the second nor third prong of the plain error standard has been satisfied, we need not reach the issue of whether trial counsel's statement to the trial court that the defense had no objections to the charge as given might constitute an affirmative waiver so as to violate the first prong of the standard. See *Olano*, supra, 507 U. S. at 732-733 (II) (A) ("[d]eviation from a legal rule is 'error' unless the rule has been waived"); *Jackson v. State*, 246 Ga. 459 (271 SE2d 855) (1980) (holding, under pre-OCGA § 17-8-58 law, that counsel's statement that he had no objection to charge constituted waiver of asserted error).

new trial . . . . In particular, the trial court failed to address appellee's claim that the . . . verdicts are contrary to evidence and the principles of justice and equity, OCGA § 5-5-20, and decidedly and strongly against the weight of the evidence, OCGA § 5-5-21 . . . . See generally *Ricketts v. Williams*, 242 Ga. 303 (248 SE2d 673) (1978) (no double jeopardy bar when trial court exercises authority vested in it by OCGA §§ 5-5-20 and 5-5-21 to grant new trial on weight of evidence). See also *Drake v. State*, 241 Ga. 583 (1) (247 SE2d 57) (1978) (this Court does not have discretion to grant a new trial when evidence preponderates heavily against verdict; we can only review evidence to determine if any evidence supports verdict).

*State v. Jones*, 284 Ga. 302, 303 (2) (667 SE2d 76) (2008). Accordingly, we remand this case to the trial court to consider the issues Kelly raised in his original and amended motion for new trial. See id. at 304 (2).

*Judgment reversed and case remanded. All the Justices concur, except Carley, P. J., and Hines, J., who concur specially.*

HINES, Justice, concurring specially.

Although I agree with the majority opinion as to Divisions 2 and 3, I cannot join in Division 1. Accordingly, I concur in the judgment to reverse the trial court and remand the case, and concur specially as to Division 1.

The majority states that "under OCGA § 17-8-58 (b), appellate review for plain error is required whenever an appealing party asserts an error in jury instructions." Maj. op., p. 32. However, OCGA § 17-8-58 (b) reads:

Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error *may* be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

(Emphasis supplied.) The approach the majority takes would be proper if the General Assembly had written only the first sentence of OCGA § 17-8-58 (b), but that body also wrote the second sentence, including the term "may be considered on appeal." I believe that the language of the second sentence must also be given effect. In my view, reading OCGA § 17-8-58 (b) as a whole reveals a legislative

intent that the failure of an appealing party to comply with OCGA § 17-8-58 (a) "shall preclude appellate review" of the portion of the jury instruction challenged, and in order to avoid such legislative bar, the appealing party must properly raise the review that is permitted, i.e., that the omission from, or inclusion of, certain language in the jury instructions constituted plain error. When setting forth the exception to the legislative bar to appellate review, the General Assembly did not state that the issue of plain error "shall" be considered on appeal, but that it "may."

Kelly has asserted in this Court that an omission from the jury instructions constituted plain error. Thus, the issue is properly presented, and I agree with the majority's treatment of it.

I am authorized to state that Presiding Justice Carley joins in this special concurrence.

DECIDED NOVEMBER 7, 2011.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Paige Reese Whitaker, Assistant District Attorneys*, for appellant.
*Cromwell & Hibbert, Henry A. Hibbert*, for appellee.