311 Ga. 221
FINAL COPY

S21A0034.  JOHNSON v. THE STATE.

BOGGS, Justice.

This is the fourth appearance of this case before this Court. At a 2014 jury trial, John "Shug" Johnson was found guilty of malice murder and other offenses in connection with the shooting death of Brandon Scott. Johnson's motion for new trial was granted on the basis of plain error in the jury instructions, and this Court affirmed that order. Upon return of the case to the trial court, Johnson filed a plea in bar, asserting that the evidence presented in the original trial was insufficient to support his conviction. We conclude that the trial court did not err in denying his plea in bar, though not for the reasons recited in its order, and we therefore affirm.

The State originally indicted Johnson, Albert Reaux, and Michael Williams for the murder of Brandon Scott and related crimes. According to the evidence presented at Johnson's trial, the

three men were driving around with the victim on New Year's Eve in 2005 when Johnson shot Scott in the head, neck, and chest. Scott was pushed out of the car and crawled to a nearby house, where he bled to death on the front porch and was discovered by a resident the following morning.

The State, after further investigation, requested an order of nolle prosequi on the charges against Reaux and Williams, who promptly disappeared and were not located for several years. Johnson's motion to dismiss on speedy trial grounds was granted, but this Court reversed in *State v. Johnson*, 291 Ga. 863 (734 SE2d 12) (2012) ("*Johnson I*"), and the case proceeded to trial. Reaux testified at Johnson's trial; Williams refused to testify and was held in contempt. The jury found Johnson guilty of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime, but after a short bifurcated trial found him not guilty of possession of a firearm by a convicted felon. The jury was not given any instructions regarding accomplices or accomplice corroboration.

Johnson filed a motion and an amended motion for new trial asserting numerous grounds, including that the State failed to present sufficient evidence to support the convictions, see *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), and that the trial court erred in failing to include the accomplice-corroboration charge when giving the single-witness charge, see *Stanbury v. State*, 299 Ga. 125, 130-131 (2) (786 SE2d 672) (2016); OCGA § 24-14-8. In its order on Johnson's motion for new trial, the trial court held the evidence sufficient but granted a new trial on the basis of failure to give the accomplice-corroboration charge. The State appealed. Almost two months later, Johnson filed a motion for an out-of-time cross-appeal, seeking appellate review of the trial court's determination that the evidence was sufficient to support his conviction. The trial court denied that motion, finding that Johnson had failed to show good cause for the delay. Johnson did not seek to appeal that ruling.

This Court affirmed the grant of a new trial in *State v. Johnson*,

305 Ga. 237 (824 SE2d 317) (2019) ("*Johnson III*").[1] Applying the

plain error test of *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232)

(2011), we concluded that the trial court's failure to instruct the jury

sua sponte on accomplice corroboration in tandem with the single-

witness charge was plain error, and that the trial court therefore did

not err in granting Johnson's motion for new trial. See *Johnson III*,

305 Ga. at 241-242. In a footnote, this Court stated, "We need not

review the trial court's determination that the evidence at the first

trial was legally sufficient, and we express no opinion on that issue."

Id. at 242 n.7.

After the case returned to the trial court, Johnson filed a plea

in bar on double jeopardy grounds, which the trial court denied,

finding that the evidence presented at trial was sufficient to

corroborate Reaux's testimony. Johnson appeals, asserting that the

evidence was insufficient to support his convictions because Reaux's

---

[1] In *Johnson v. State*, 304 Ga. 369 (818 SE2d 601) (2018) ("*Johnson II*"), this Court affirmed the trial court's denial of Johnson's request for a supersedeas bond during the pendency of the State's appeal of the grant of Johnson's motion for new trial. See id. at 376.

testimony was uncorroborated. The State responds that Johnson has waived his sufficiency claim; that the evidence at the first trial would have allowed a properly instructed jury to conclude that Reaux was not an accomplice; and that the evidence was sufficient in any event to corroborate Reaux's testimony. We need not address the State's waiver argument or the sufficiency of the corroborating evidence, because we conclude that, based on the evidence presented at Johnson's trial, a properly instructed jury could have found that Reaux was not an accomplice. The State therefore is not barred from retrying Johnson.

> [T]he constitutional protection against double jeopardy does not preclude the State from retrying a criminal defendant whose conviction is set aside due to improper instructions, if the evidence at the original trial was legally sufficient for *a properly instructed jury* to have found the defendant guilty beyond a reasonable doubt.

(Citation and punctuation omitted; emphasis supplied.) *Wetzel v. State*, 298 Ga. 20, 28 (3) (779 SE2d 263) (2015) (citing *State v. Caffee*, 291 Ga. 31, 34 (3) (728 SE2d 171) (2012)).[2] And if the evidence at the

---

[2] While Georgia law prohibits conviction on the uncorroborated

5

original trial would have authorized a properly instructed jury to find that a witness was *not* an accomplice, that finding would eliminate the need for corroboration under OCGA § 24-14-8, and the witness' testimony alone could be sufficient to convict. See *State v. Grier*, 309 Ga. 452, 456 (2) (847 SE2d 313) (2020); see also *Fisher v. State*, 309 Ga. 814, 819 (2) (a) (848 SE2d 434) (2020); *Kelly v. State*, 270 Ga. 523, 525 (2) (511 SE2d 169) (1999).

At Johnson's trial, evidence was presented that, on New Year's Eve in 2005, Johnson, Reaux, and Williams went to a club and encountered Scott there. According to Reaux, Scott rode with them to drop Reaux off at the home of Kevia Eaglin, his girlfriend at the time. On the way there, Johnson and Scott "went to fussing" over some drugs and a gun that Scott had taken from Johnson. Johnson suddenly pulled out a pistol, turned around, and shot Scott in the chest. Reaux, "totally shocked," jumped out of the car and ran to

---

testimony of an accomplice, see OCGA § 24-14-8, the question of sufficiency of the evidence to satisfy federal constitutional due process under *Jackson v. Virginia* has no such requirement. See *State v. Grier*, 309 Ga. 452, 456 (2) (847 SE2d 313) (2020).

Eaglin's house. According to Eaglin, Reaux told her that "him and John had just killed Brandon," that Johnson "turned around and shot" Scott, and that "they" then pushed him out of the car.[3] In Reaux's statement to the detective, however, he denied having a firearm or firing a shot. The State's ballistic expert testified that the bullets recovered from Scott's body were fired from the same firearm. Eaglin also testified that Reaux and Scott were friends.

Eaglin's testimony that Reaux admitted to participating in the shooting constituted slight evidence to support the giving of the accomplice-corroboration instruction.[4] See *Doyle v. State*, 307 Ga. 609, 612 (2) (a) (837 SE2d 833) (2020) ("It is error to fail to give a jury instruction on accomplice liability where there is *slight* evidence supporting a finding that a witness was an accomplice." (Citation and punctuation omitted; emphasis supplied.)) Although

---

[3] Eaglin also gave a statement to a police detective in which she said that Reaux told her that Johnson shot Scott first and that Reaux then fired a shot. But Eaglin stated that she did not believe this, because Reaux was known for "telling stories about himself, making himself look like a big guy."

[4] As we observed in *Johnson III*, 305 Ga. at 241, "virtually all of the incriminating evidence flowed from Reaux," either through his testimony at trial, his statements to the police, or his statements to Eaglin.

7

the jury could have found that Reaux was an accomplice, it was also authorized to rely on other evidence, including inconsistencies in Reaux's and Eaglin's testimony and their statements to the police, to conclude that Reaux had no knowledge that Johnson intended to shoot Scott, did not share Johnson's criminal intent to do so, fled the scene out of fear and surprise, and thus was not an accomplice.

In *Fisher*, this Court drew the distinction between Fisher's first trial, in which the jury was not instructed on accomplices or accomplice corroboration, and Fisher's retrial, in which the trial court gave the pattern jury instructions on accomplice corroboration, including the instruction that a witness is not an accomplice if his participation in the crime was unknowing or coerced, and that no corroboration would then be required. See 309 Ga. at 819 (2) (a); see also Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §§ 1.31.92, 1.31.94 (4th ed. 2020). We concluded that the properly charged jury could rely upon the witness' testimony that he did not know Fisher was going to shoot the victim, that "he was afraid and in shock" after seeing his friend killed, and that he drove

8

Fisher away from the scene out of fear. See *Fisher*, 309 Ga. at 819 (2) (a). As a result, the jury was authorized to determine that the witness was not an accomplice and his testimony did not need to be corroborated. See id. Moreover, "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citations and punctuation omitted.) Id. See also *Kelly*, 270 Ga. at 525 (2) (when witness testified that he acted out of fear and coercion and did not know defendant intended to murder victim, it was for jury to determine whether witness was accomplice). Here, as in *Fisher*, a properly charged jury could have determined from the evidence presented that Reaux was not an accomplice and that corroboration of his testimony was not necessary.

Johnson argues that the trial court found that Reaux was an accomplice in its order denying Johnson's plea in bar, as well as contending that this Court did likewise in *Johnson III*. But in its order, the trial court made no such finding; rather, it initially referred to Reaux as "Defendant's *alleged* accomplice, Albert Reaux

9

(the 'Accomplice')." (Emphasis supplied.) And in *Johnson III*, in determining whether the accomplice and corroboration charges should have been given, we considered only whether there was slight evidence presented at trial that was sufficient to warrant the charge, a wholly different analysis from that required in this double jeopardy context where we are determining whether the evidence was sufficient for a properly instructed jury to convict. See *Doyle*, 307 Ga. at 612 (2) (a); see also *Grier*, 309 Ga. at 456 (2) (evidence at trial authorized jury to find witness was not an accomplice "notwithstanding that the trial judge in his capacity as a thirteenth juror found otherwise").

Despite some evidence to the contrary presented at Johnson's trial, a properly instructed jury could have found that Reaux was not an accomplice, and corroboration of his testimony therefore was not required. And under the *Jackson* due process standard, viewing the evidence in the light most favorable to the jury's verdict, the evidence presented at trial, particularly Reaux's testimony, was legally sufficient to support the jury's verdicts as a matter of federal

10

constitutional due process. For these reasons, we therefore affirm the trial court's denial of Johnson's plea in bar.

*Judgment affirmed. All the Justices concur, except LaGrua, J., disqualified.*

Decided April 5, 2021.

Murder. Fulton Superior Court. Before Judge LaGrua.

*Brian C. Tevis*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Mathew E. Plott, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.